

# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

**FILED**

SEP 1 3 2010

Phil Lombardi, Clerk
U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| **(1)** | **SCHLANGER INSURANCE TRUST (ANDREA SCHLANGER, TRUSTEE),** | ) ) ) ) |
|  | **Plaintiff,** | ) ) |
|  | **vs** | ) ) |
| **(1)** | **JOHN HANCOCK LIFE INSURANCE (U.S.A.), Inc., a Michigan corporation,** | ) ) ) ) |
| **(2)** | **MORGAN STANLEY SMITH BARNEY LLC, a Delaware limited liability company Delaware Corporation), and** | ) ) ) ) |
| **(3)** | **J. CHARLES ADAM, JR., a resident of Texas,** | ) ) ) |
|  | **Defendants.** | ) |

**10 CV - 5 7 6 TCK   TLW**

## COMPLAINT

Rose Schlanger Insurance Trust (of which Andrea Schlanger is the sole trustee), for its claims against the defendants, states:

## PARTIES, JURISDICTION AND VENUE

(1)     Schlanger Insurance Trust (the "Trust") is an Oklahoma trust formed pursuant to a trust agreement dated July 1, 1983. The Trust is sited in the State of Oklahoma. Andrea Schlanger, the trustee of the Trust ("Trustee"), is a resident of the State of Oklahoma.

(2)     John Hancock Life Insurance (U.S.A.), Inc. ("John Hancock") is a Michigan corporation with its principal place of business in Massachusetts. John Hancock is the successor in interest to The Manufacturers Life Insurance Company

1



(U.S.A.), a stock company ("Manulife").   Manulife issued the life insurance policy the issuance of which is the subject of this complaint: Manulife Policy Number 58992884 (a copy of which is attached as Exhibit A; hereafter, the "Manulife Policy").   John Hancock assumed all the obligations and liabilities of Manulife incurred in the sale and issuance of the insurance policy which is the subject of this complaint.   Manulife and John Hancock are hereafter called "John Hancock."

(3)   Morgan Stanley Smith Barney, LLC ("Smith Barney") is a Delaware limited liability company with its principal place of business in New York.   Smith Barney is in the business of selling securities and life insurance.   Smith Barney sold the life insurance policy which is the subject of this complaint.

(4)   J. Charles Adam, Jr. (also known as "Chuck Adam") is a resident of Texas.   At the relevant times, Mr. Adam was an employee of Smith Barney engaged in the selling of securities and life insurance.   Mr. Adam represented Smith Barney and John Hancock, as John Hancock's agent, in the sale of the policy which is the subject of this complaint.   Mr. Adam was Smith Barney's insurance expert to whom the Trust was referred for advice respecting the Conseco Policy hereafter discussed.   Mr. Adam travelled to Tulsa several times to meet with the Trustee of the Trust for the purpose of advising the Trust concerning the Conseco Policy and the Manulife Policy.

(5)   This Court has subject matter jurisdiction under 28 USC §1332(a).

(6)   The amount in controversy exceeds $75,000.

(7)   Venue is proper in this Court under 28 USC §1391(a)(1) & (c).

2

## UNDERLYING FACTS

### John Hancock's Sale of the Manulife Policy in May 2002

(8)     As of May 2002, the Trust was the owner of a whole life insurance policy originally issued by Philadelphia Life Insurance Company and subsequently assumed by Conseco Life Insurance Company (respectively, "Conseco Insurance" and the "Conseco Policy"). The Conseco Policy insured the life of Sondra Rose Schlanger. Rose Schlanger was, in May of 2002, 87 years old.

(9)     The Conseco Policy:

     (a)     Was purchased by the Trust in 1983;

     (b)     Insured the life of Rose Schlanger for the entirety of her life;

     (c)     Had a death benefit of $1,000,000;

     (d)     Had a cash value of approximately $542,000;

     (e)     Was standard rated; and,

     (f)     Had an annual premium of only $ $27,683.20.

(10)    In May 2002, the Trust was informed that the financial position of the parent company of Conseco Insurance might adversely affect the value of the Conseco Policy and, as a result of such advice, inquired of Mr. Adam whether the Conseco Policy should be replaced.

(11)    In response to the Trust's May 2002 inquiry, Smith Barney and Mr. Adam:

     (a)     Advised the Trust, in response to the Trust's inquiry about Conseco, that Conseco was in dire straits and the Trust had to replace the Conseco Policy because of financial difficulties with Conseco's parent.

(b)  Advised the Trust that John Hancock would issue a replacement policy for the entirety of Rose Schlanger's life with a "paid up death benefit" of $660,000, without the payment of any further premiums;

(c)  Advised the Trust that John Hancock would issue a replacement policy for the entirety of Rose Schlanger's life with a death benefit of $1,000,000 for an annual premium of $55,750;

(d)  Advised the Trust that the Manulife Policy was the only policy the Trust could get and that the Trust had to move in a hurry to get it;

(e)  Advised the Trust that the $55,750 annual premium would "provide a guarantee that the policy face amount would be paid in a worst case scenario";

(f)  Advised the Trust that (i) even to reach the point where the "guaranteed values are realized" would mean a "dire situation" and (ii) "anything better than the worst case scenario would mean fewer premiums in the future [that is, less than $57,500 each year]";

(g)  Recommended that the Trust acquire a new insurance policy from John Hancock despite the fact that the new policy would be a rated premium policy;

(h)  Procured the issuance of the Manulife Policy by falsifying, in the manner hereafter described, Manulife Form NB3511US (05/2000) entitled "Replacement of Life Insurance or Annuities."

The foregoing misrepresentations are hereafter collectively called the "May 2002 Affirmative Misrepresentations".

(12)  In response to the Trust's May 2002 inquiry, Smith Barney and Mr. Adam:

(a)  Failed to advise the Trust that the financial position of the parent holding company of Conseco Insurance would not adversely affect the value of the Conseco Policy;

(b)  Failed to advise the Trust that the actual premiums required to maintain the death benefit were not guaranteed but were dependent upon (i) an assumed interest rate which could vary from time to time and (ii) John Hancock's "cost of insurance"; and,

(c)     Failed to advise the Trust that the Trust would have no practicable way of ever knowing or understanding what John Hancock's cost of insurance was.

The foregoing failures are hereafter collectively called the "May 2002 Material Omissions."

(13)     Smith Barney and Mr. Adam falsified the May 2002 Manulife Form "Replacement of Life Insurance or Annuities" by, after procuring the Trust' signature to the form, checking the box to indicate that the underwriting classification for the Manulife Policy would be more favorable than the underwriting classification for the Conseco Policy.   In fact, the Conseco Policy was a standard policy and the Manulife Policy was a substantially rated policy, a less favorable underwriting.  Had Smith Barney and Mr. Adam, as agent of John Hancock, not falsified the Manulife Form, John Hancock would not have issued the Manulife Policy.

### Mr. Adam's Advice Not to Pay Premiums

(14)     Pursuant to the instructions of John Hancock that, should the Policyholder have any questions concerning premiums or the Policy Protection Rider, the Policyholder should consult her agent, the Trustee of the Trust discussed the payment of the annual premium in each year in 2003, 2004, and 2005 with John Hancock's agent, Mr. Adam, who advised the Trustee not to pay the annual $55,700 premium.  Consistent with Mr. Adam's May 2002 advice that "anything better than a worst case scenario means fewer premiums in the future," Mr. Adam advised the Trust not to pay the regularly scheduled annual $55,700 premiums on the Manulife Policy in 2003, 2004, and 2005.  Mr. Adam did not tell the Trust (i)

5

that a failure to pay the annual premium would adversely affect the guarantee because the guarantee was a "flexible guarantee" as John Hancock would later describe it (whatever that is supposed to mean) or (ii) that the actual benefits of the Policy would be determined by John Hancock pursuant to some undisclosed "reference value" to which Manulife Policyholders would have no access.

(15)   The manner in which John Hancock administers the Policy Protection Rider is contrary to the defendants' representation (i) that the $55,700 annual premium guaranteed that "the policy face amount would be paid in a worst case scenario," (ii) that even to reach the point where the "guaranteed values are realized" would mean a "dire situation" for the insurer, and (iii) that "anything better than the worst case scenario would mean fewer premiums" than the $55,700 each year.

(16)   Because the Trust had already made a premium deposit of $552,156.08, the Trust justifiably relied upon Mr. Adam's advice, as the employee of Smith Barney and the agent of John Hancock, not to pay the annual premiums for 2003, 2004, and 2005.   The Trust paid the annual premiums in 2006, 2007, 2008, 2009, and in 2010, until the Trust no longer had the ability to pay the exorbitant premiums.

(17)   Annually, from 2003 until June 2008, John Hancock provided Policy Summary reports to the Trust which reflected that no payments were due to maintain the Policy Protection Rider in effect.

(a)   These reports reinforced the advice of Mr. Adam (as an employee of Smith Barney and an agent of John Hancock) that anything better than the worst case scenario would mean fewer premiums than the $57,500.

(b)   John Hancock, Smith Barney, and Mr. Adam failed to advise the Trust that (i) the Protection Rider was a means by which John Hancock could terminate the benefits of the Policy unless the

6

Policyholder paid increased premiums and (ii) failure to pay the annual premium could result in future exorbitant and unaffordable premiums, rendering the Policy worthless.

(18)   In an e-mail dated March 23, 2009, Mr. Adam explained in writing how the Policy Protection Rider actually worked (the "March 2009 disclosure"). Mr. Adam again recommended the Trust not pay the Policy Protection Rider. Mr. Adam advised the Trust that:

  (a)   "The economics of contributing enough premium to maintain the Policy Protection Rider only made sense if John Hancock raised the cost of insurance in the policy to their highest contractually allowable level."

  (b)   "The chances of the escalating so high are extremely remote."

  (c)   "Thus, you pay way too much to hedge that risk with the Policy Protection Rider."

(19)   The March 2009 disclosure was the first time that John Hancock, Smith Barney, or Mr. Adam had disclosed that paying way too much was the only way in which the benefits they had represented were guaranteed could be received.

**John Hancock's 2009 Demand For Exorbitant Premiums and Lapse of Policy**

(20)   In June 2008, John Hancock sent the Trust a "Premium Reminder Notice" that reflected for the first time that the benefits were not guaranteed at all. This June 2008 report reflected that the Trust would have to pay $116,136.31 ($60,436.31 more than the guaranteed $55,700) or the Policy would lapse.

(21)   In March 2009, the Trust received notice from John Hancock that the "guarantees on her policy were in jeopardy." The Trust began inquiries to determine how the worst case guarantees could be in jeopardy. John Hancock advised the Trust that, in order to continue to obtain the guaranteed $1,000,000 death benefit, the Trust

7

would have to begin making exorbitant premium payments which, over the life of the Manulife Policy, would total more than $1,900,000.

(22)     In June 2009, John Hancock demanded $224,971.24 to prevent the lapse of the Policy in June 2010.  The Trust was unable to make the exorbitant premium payments alleged to be due to prevent a lapse of the policy and, in any event, if such exorbitant premiums were really due, the Policy would be worthless because, as of June 2009, in order to maintain the promised $1,000,000 death benefit for the entirety of the life of Rose Schlanger, the Trust would have to pay at least another $1,000,000 on top of the nearly $865,656 in premiums the Trust had already paid.

(23)     Through the remainder of 2009 and into 2010, the Trust tried to reach an accommodation with the defendants.  Ultimately, the Trust demanded that Smith Barney, John Hancock, and Mr. Adam make whatever premium payments were required in order to prevent the Policy from lapsing.  Smith Barney, John Hancock, and Mr. Adam refused to make such payments.  The Policy lapsed June 19, 2010

## REQUESTED RELIEF

### Count I
### Breach of Promise to Pay Death Benefits for Stipulated Annual Premium

(24)     The Trust adopts the allegations of paragraphs 1 through 23.

(25)     John Hancock and Smith Barney breached their promise that, in exchange for an annual premium of $55,700, the policy face amount would be paid in a worst case scenario.

8

(26)   Wherefore, in respect of Count I of this Complaint, the Trust requests this Court enter its judgment as follows:

    (a)   Declaring that, upon the death of Rose Schlanger, John Hancock shall be obligated to pay to the Trust as the beneficiary of the Manulife Policy the sum of $1,000,000;

    (b)   Awarding the Trust its cost of this litigation (including reasonable attorney and expert fees); and,

    (c)   Granting the Trust such additional relief as the Court may determine is appropriate.

## Count II
### Fraudulent Inducement – Sale of Manulife Policy

(27)   The Trust adopts the allegations of paragraphs 1 through 23.

(28)   The Defendants' omissions and misrepresentations referred to in paragraphs 1 through 23 were made with the intent to induce the Trust into purchasing the Manulife Policy.

(29)   The Trust justifiably relied on the Defendants' misrepresentations and was fraudulently induced to buy the Manulife Policy.

(30)   Wherefore, in respect of Count II of this Complaint, the Trust requests this Court enter its judgment as follows:

    (a)   For rescission of the sale of Manulife Policy;

    (b)   Awarding the Trust its cost of this litigation (including reasonable attorney and expert fees); and,

    (c)   Granting the Trust such additional relief as the Court may determine is appropriate.

## Count III
### Constructive Fraud – Sale of Manulife Policy

(31)   The Trust adopts the allegations of paragraphs 1 through 23.

(32)   The acts and omissions of the defendants described in paragraphs 1 through 23 constitute constructive fraud in the sale of the Manulife Policy.

(33)   Wherefore, in respect of Count III of this Complaint, the Trust requests this Court enter its judgment as follows:

   (a)   For rescission of the sale of Manulife Policy;

   (b)   Awarding the Trust its cost of this litigation (including reasonable attorney and expert fees); and,

   (c)   Granting the Trust such additional relief as the Court may determine is appropriate.

**Count IV**
**Negligent Misrepresentation – Sale of Manulife Policy**

(34)   The Trust adopts the allegations of paragraphs 1 through 23.

(35)   The representations and omissions of Mr. Adam, as an employee of Smith Barney and agent of John Hancock, were negligent misrepresentations.

(36)   The Policy Summary reports misrepresented the manner in which John Hancock administers the Policy, both by affirmatively misleading statements and by the failure to disclose material facts which under the circumstances were required to be made in order make the statements made not misleading.

(37)   Wherefore, in respect of Count IV of this Complaint, the Trust requests this Court enter its judgment as follows:

   (a)   For rescission of the sale of Manulife Policy;

   (b)   Awarding the Trust its cost of this litigation (including reasonable attorney and expert fees); and,

   (c)   Granting the Trust such additional relief as the Court may determine is appropriate.

**Count V**
**Breach of Contract – Advice Not to Pay 2003-2005 Premiums**

(38)  The Trust adopts the allegations of paragraphs 1 through 23.

(39)  Mr. Adam's advice, as an employee of Smith Barney and agent of John Hancock, did not meet the standard of care usually and customarily employed by insurance agents in the industry.

(40)  The Trust relied upon the advice of Mr. Adam and did not pay the annual premiums in 2003, 2004, and 2005.

(41)  As a result of not paying premiums in 2003, 2004, and 2005 and the manner in which John Hancock administers the policy, (i) the premiums demanded by John Hancock to maintain the benefits of the Manulife Policy were exorbitant and beyond the means of the Trust to pay and (ii) as a result, John Hancock declared a termination of the Policy.

(42)  The Trust demanded John Hancock, Smith Barney, and Mr. Adam, prior to such termination of the Policy, make all payments required to prevent such termination.  John Hancock, Smith Barney, and Mr. Adam have refused to do so. John Hancock persists in asserting that the Policy has terminated and no death benefits will be paid upon the death of Rose Schlanger. As a result of the foregoing, a justiciable controversy exists between the Trust on the one hand and John Hancock, Smith Barney and Mr. Adam on the other hand.

(43)  Wherefore, in respect of Count V of this Complaint, the Trust requests this Court enter its judgment as follows:

(a)     Declaring that, upon the death of Rose Schlanger, John Hancock shall be obligated to pay to the Trust as the beneficiary of the Manulife Policy the sum of $1,000,000;

(b)     Awarding the Trust its cost of this litigation (including reasonable attorney and expert fees); and,

(c)     Granting the Trust such additional relief as the Court may determine is appropriate.

RESPECTFULLY SUBMITTED

Frederic Dorwart, OBA #2436
James Higgins OBA #18570
FREDERIC DORWART, LAWYERS
Old City Hall Building
124 East Fourth Street
Tulsa, Oklahoma 74103-5010
Tel:     (918) 583-9922
Fax:    (918) 583-8251
Email:  fdorwart@fdlaw.com
            jhiggins@fdlaw.com

# EXHIBIT A

# THE MANUFACTURERS LIFE INSURANCE COMPANY (U.S.A.)
## A STOCK COMPANY

*Life Insured*          **SONDRA ROSE SCHLANGER**

*Policy Number*         **58 992 884**

### FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY

ADJUSTABLE DEATH BENEFIT.

BENEFIT PAYABLE ON LIFE INSURED'S DEATH.

FLEXIBLE PREMIUMS PAYABLE TO ATTAINED AGE 100 DURING THE LIFE INSURED'S LIFETIME.

NON-PARTICIPATING (NOT ELIGIBLE FOR DIVIDENDS).

---

In this policy "you" and "your" refer to the owner of the policy. "We", "us" and "our" refer to The Manufacturers Life Insurance Company (U.S.A.).

If the life insured dies while the policy is in force, we will pay the Insurance Benefit to the beneficiary, subject to the provisions of the policy. The life insured and the beneficiary are named in the Policy Information section of this policy. The Insurance Benefit is described in the Insurance Benefit provision.

---

*READ YOUR POLICY CAREFULLY. It is a legal contract between you and us.*

*FRAUD WARNING. Any person who knowingly, and with intent to injure, defraud or deceive an insurer, makes any claim for proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.*

*RIGHT TO RETURN POLICY. If for any reason you are not satisfied with your policy, you may return it for cancellation by delivering or mailing it to us or to the agent who sold it. If this policy does not replace another policy, you may return it within TEN days after receiving it, or if it replaces another policy, you may return it within TWENTY days after receiving it. We will refund in full the payment made. The policy will be void from the beginning. If not refunded within 30 days from the date of cancellation, we will pay interest on the proceeds as required by Title 36 Oklahoma Statute Section 4003.1(A).*

**Service Office: 200 Bloor Street East, Toronto, Ontario, M4W 1E5**

President                    Secretary

S0693ok

# Table of Contents

**PAGE**

Policy Information ................................................................. 3
Table of Guaranteed Maximum Cost of Insurance Rates .................... 4
Definitions ........................................................................ 5
Age and Sex ...................................................................... 6
Suicide ............................................................................ 6
Protection Against Creditors ................................................... 6
Currency and Place of Payment ............................................... 6
Contract ........................................................................... 6
Validity ........................................................................... 6
Non-Participating ................................................................ 7
Annual Statement ................................................................ 7
Inforce Illustration ............................................................. 7
Tax Considerations .............................................................. 7
Right To Postpone Payment Of Benefits ...................................... 7
Beneficiary ....................................................................... 7
Ownership and Assignment ..................................................... 8
How Values are Computed ...................................................... 8
Payment of Premiums ........................................................... 8
Policy Termination .............................................................. 9
Reinstatement .................................................................... 9
Insurance Benefit ............................................................... 10
Policy Value ...................................................................... 11
Policy Value Composition ...................................................... 12
Policy Loan Conditions ......................................................... 12
Surrender and Withdrawals ..................................................... 13
Changing the Death Benefit Option or the Face Amount ................... 14
Right to Cancel Increases ...................................................... 15

A copy of the application, any supplementary benefits, and any endorsements follow page 15.

S0693us

1-766 PZ

## POLICY INFORMATION

| | | | |
|---|---|---|---|
| LIFE INSURED | SONDRA ROSE SCHLANGER | AGE AT POLICY DATE | 87 |
| POLICY NUMBER | 58 992 884 | POLICY DATE | JUN 19, 2002 |
| | | ISSUE DATE | JUN 26, 2002 |

OWNER      ANDREA SCHLANGER, TRUSTEE OF THE SCHLANGER INSURANCE TRUST DATED JULY 1, 1983

BENEFICIARY      AS DESIGNATED IN THE APPLICATION OR SUBSEQUENTLY CHANGED

PREMIUM MODE      ANNUAL

BEGINNING ON
MON DAY YEAR      PLANNED PREMIUM

JUN 19, 2002      1. $0.00 FOR 1 YEAR      2. $55,700 THEREAFTER

INITIAL/
ADDITIONAL PREMIUM      $552,156.08

This policy provides life insurance coverage for the lifetime of the life insured if sufficient premiums are paid. Premium payments in addition to the planned premium shown may need to be made to keep this policy and coverage in force.

Keeping the policy and coverage in force will be affected by factors such as: changes in the current cost of insurance rates; the amount, timing and frequency of premium payments; the interest rate being credited to the guaranteed interest account; changes to the death benefit option; changes in the face amount; loan activity; and partial withdrawals. Also refer to the "Policy Termination" provision of your policy.

Plan details, risk classification and additional rating are shown on the next page.

S0693us

## POLICY INFORMATION (CONTINUED)

LIFE INSURED    SONDRA ROSE SCHLANGER

POLICY NUMBER    58 992 884

PLAN    FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE
NON-PARTICIPATING

FACE AMOUNT    $1,000,000.00

DEATH BENEFIT    OPTION 1

SEX    FEMALE

RISK
CLASSIFICATION    NON-SMOKER , RATED CLASS

ADDITIONAL
RATING    75% APPLIED TO THE COST OF INSURANCE

S0693us(02)

## POLICY INFORMATION (CONTINUED) - POLICY 58 992 884

### TABLE OF EXPENSE CHARGES

PREMIUM CHARGE:

IN POLICY YEAR 1, 35% OF EACH PREMIUM PAYMENT UP TO THE PREMIUM CHARGE LIMIT SHOWN IN THE TABLE OF VALUES IN THE POLICY INFORMATION SECTION. 10% OF EACH PREMIUM PAYMENT IN EXCESS OF THE PREMIUM CHARGE LIMIT.

IN POLICY YEARS 2 TO 6, 10% OF EACH PREMIUM PAYMENT.

IN POLICY YEAR 7 AND THEREAFTER, 7% OF EACH PREMIUM PAYMENT.

MONTHLY ADMINISTRATIVE CHARGE:

$10.00 DEDUCTED FROM THE GUARANTEED INTEREST ACCOUNT.

MONTHLY CONTRACT CHARGE:

$0.0800 PER $1,000 OF FACE AMOUNT OF THE BASIC POLICY DEDUCTED FROM THE GUARANTEED INTEREST ACCOUNT.

MONTHLY COST OF INSURANCE CHARGE:

SEE THE MONTHLY DEDUCTIONS SECTION OF THE POLICY VALUE PROVISION FOR DETAILS. THE COST OF ANY SUPPLEMENTARY BENEFIT IS DESCRIBED IN THE SUPPLEMENTARY BENEFIT PAGE ATTACHED TO THIS POLICY.

S0693us

## POLICY INFORMATION (CONTINUED) - POLICY 58 992 884

### TABLE OF EXPENSE CHARGES

SURRENDER CHARGE:

A SURRENDER CHARGE WILL BE DEDUCTED FROM THE GUARANTEED INTEREST ACCOUNT UNDER CERTAIN CONDITIONS AND WILL REDUCE OVER TIME ACCORDING TO THE GRADING PERCENTAGES SHOWN IN THE TABLE BELOW. SEE THE POLICY VALUE, CHANGING THE DEATH BENEFIT OPTION OR FACE AMOUNT, SURRENDER AND WITHDRAWALS PROVISIONS FOR DETAILS.

THE SURRENDER CHARGE IS DETERMINED AS FOLLOWS:

FOR THE INITIAL FACE AMOUNT

(I)   $50,000.00; MINUS

(II)  26.7% OF THE SUM OF PREMIUMS PAID IN THE FIRST POLICY YEAR UP TO AN AMOUNT NOT GREATER THAN THE PREMIUM CHARGE LIMIT SHOWN IN THE TABLE OF VALUES IN THE POLICY INFORMATION SECTION.

TABLE OF GRADING PERCENTAGES DURING THE SURRENDER CHARGE PERIOD
(APPLICABLE TO THE INITIAL FACE AMOUNT AND SUBSEQUENT INCREASES)

| SURRENDER CHARGE PERIOD | AGE 0-85 | 86 | 87 | 88 | 89 | 90 |
|---|---|---|---|---|---|---|
| 1 | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% | 100.00% |
| 2 | 93.33% | 92.86% | 92.31% | 91.67% | 90.91% | 90.00% |
| 3 | 86.67% | 85.71% | 84.62% | 83.33% | 81.82% | 80.00% |
| 4 | 80.00% | 78.57% | 76.92% | 75.00% | 72.73% | 70.00% |
| 5 | 73.33% | 71.43% | 69.23% | 66.67% | 63.64% | 60.00% |
| 6 | 66.67% | 64.29% | 61.54% | 58.33% | 54.55% | 50.00% |
| 7 | 60.00% | 57.14% | 53.85% | 50.00% | 45.45% | 40.00% |
| 8 | 53.33% | 50.00% | 46.15% | 41.67% | 36.36% | 30.00% |
| 9 | 46.67% | 42.86% | 38.46% | 33.33% | 27.27% | 20.00% |
| 10 | 40.00% | 35.71% | 30.77% | 25.00% | 18.18% | 10.00% |
| 11 | 33.33% | 28.57% | 23.08% | 16.67% | 9.09% | 0.00% |
| 12 | 26.67% | 21.43% | 15.38% | 8.33% | 0.00% | |
| 13 | 20.00% | 14.29% | 7.69% | 0.00% | | |
| 14 | 13.33% | 7.14% | 0.00% | | | |
| 15 | 6.67% | 0.00% | | | | |
| 16 | 0.00% | | | | | |

GRADING PERCENTAGE SHOWN IS AT BEGINNING OF POLICY YEAR.
PROPORTIONATE GRADING PERCENTAGE APPLIES FOR OTHER POLICY MONTHS.

Page 3.1B

S0693us

## POLICY INFORMATION (CONTINUED) - POLICY 58 992 884

### TABLE OF VALUES

**Refer to your policy provisions for details on the terms and values shown in this table.**

| | |
|---|---|
| MINIMUM FACE AMOUNT | $100,000.00 |
| MINIMUM FACE AMOUNT INCREASE OR DECREASE | $10,000.00 |
| MINIMUM INITIAL PREMIUM | $11,579.81 |
| GUARANTEED INTEREST ACCOUNT RATE | 4.00% |
| INITIAL LOAN INTEREST RATE BASIS | FIXED - 6% |
| MAXIMUM LOAN INTEREST CREDITED DIFFERENTIAL | 2.00% |
| DEATH BENEFIT DISCOUNT FACTOR | 1.00327374 |
| PREMIUM CHARGE LIMIT | $127,346.17 |
| GOVERNING LAW | OKLAHOMA |

S133-4us

## POLICY INFORMATION (CONTINUED) - POLICY 58 992 884

### SUPPLEMENTARY BENEFITS

| | |
|---|---|
| BENEFIT | POLICY PROTECTION RIDER |
| LIFE INSURED | SONDRA ROSE SCHLANGER |
| AGE AT EFFECTIVE DATE | 87 |
| EFFECTIVE DATE | JUN 19, 2002 |
| SEX | FEMALE |
| RISK CLASSIFICATION | NON-SMOKER , RATED CLASS |
| BENEFIT PERIOD | 13 POLICY YEARS |
| BENEFIT COST | $0.0751 PER $1,000 OF BASIC FACE AMOUNT DEDUCTED MONTHLY |
| POLICY PROTECTION VALUE INTEREST RATE | 4.5% |
| POLICY PROTECTION VALUE RATES | TABLE OF RATES SHOWN ON PAGE 3.3A |
| ADDITIONAL RATING | NOT APPLICABLE |

S133-4us

## TABLE OF POLICY PROTECTION VALUE RATES

These monthly rates will be increased for any Additional Rating shown in the Policy Information section.  These rates are not used in calculating the actual policy value, cash surrender value or death benefit provided under the policy.

| DURATION (POLICY YEARS) | MONTHLY RATE $ | DURATION (POLICY YEARS) | MONTHLY RATE $ | DURATION (POLICY YEARS) | MONTHLY RATE $ |
|---|---|---|---|---|---|
| 1 | 4.4622 | | | | |
| 2 | 7.0915 | | | | |
| 3 | 7.2665 | | | | |
| 4 | 7.3885 | | | | |
| 5 | 7.4624 | | | | |
| 6 | 7.4959 | | | | |
| 7 | 7.5033 | | | | |
| 8 | 8.2702 | | | | |
| 9 | 9.3205 | | | | |
| 10 | 10.9474 | | | | |
| 11 | 13.7261 | | | | |
| 12 | 18.7979 | | | | |
| 13 | 28.4251 | | | | |

## TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES

### GUARANTEED MAXIMUM MONTHLY RATES PER $1,000 OF NET AMOUNT AT RISK

### FEMALE, NON-SMOKER, STANDARD

| LIFE INSURED'S ATTAINED AGE | MONTHLY RATE $ | LIFE INSURED'S ATTAINED AGE | MONTHLY RATE $ | LIFE INSURED'S ATTAINED AGE | MONTHLY RATE $ |
|---|---|---|---|---|---|
| 0 | 0.2408 | 35 | 0.1225 | 70 | 1.7666 |
| 1 | 0.0725 | 36 | 0.1300 | 71 | 1.9450 |
| 2 | 0.0675 | 37 | 0.1391 | 72 | 2.1658 |
| 3 | 0.0658 | 38 | 0.1491 | 73 | 2.4350 |
| 4 | 0.0641 | 39 | 0.1608 | 74 | 2.7516 |
| 5 | 0.0633 | 40 | 0.1733 | 75 | 3.1100 |
| 6 | 0.0608 | 41 | 0.1883 | 76 | 3.5033 |
| 7 | 0.0600 | 42 | 0.2033 | 77 | 3.9258 |
| 8 | 0.0583 | 43 | 0.2183 | 78 | 4.3775 |
| 9 | 0.0575 | 44 | 0.2333 | 79 | 4.8708 |
| 10 | 0.0566 | 45 | 0.2491 | 80 | 5.4266 |
| 11 | 0.0575 | 46 | 0.2658 | 81 | 6.0633 |
| 12 | 0.0600 | 47 | 0.2841 | 82 | 6.7991 |
| 13 | 0.0625 | 48 | 0.3041 | 83 | 7.6466 |
| 14 | 0.0666 | 49 | 0.3250 | 84 | 8.5858 |
| 15 | 0.0700 | 50 | 0.3491 | 85 | 9.6150 |
| 16 | 0.0733 | 51 | 0.3750 | 86 | 10.7150 |
| 17 | 0.0766 | 52 | 0.4041 | 87 | 11.8925 |
| 18 | 0.0791 | 53 | 0.4383 | 88 | 13.1341 |
| 19 | 0.0816 | 54 | 0.4733 | 89 | 14.4591 |
| 20 | 0.0841 | 55 | 0.5108 | 90 | 15.8658 |
| 21 | 0.0850 | 56 | 0.5491 | 91 | 17.3816 |
| 22 | 0.0866 | 57 | 0.5875 | 92 | 19.0500 |
| 23 | 0.0875 | 58 | 0.6241 | 93 | 20.9500 |
| 24 | 0.0900 | 59 | 0.6633 | 94 | 23.2758 |
| 25 | 0.0908 | 60 | 0.7091 | 95 | 26.4433 |
| 26 | 0.0933 | 61 | 0.7633 | 96 | 31.3116 |
| 27 | 0.0950 | 62 | 0.8316 | 97 | 39.5808 |
| 28 | 0.0975 | 63 | 0.9175 | 98 | 54.6541 |
| 29 | 0.1000 | 64 | 1.0191 | 99 | 83.3333 |
| 30 | 0.1033 | 65 | 1.1291 | | |
| 31 | 0.1058 | 66 | 1.2475 | | |
| 32 | 0.1091 | 67 | 1.3675 | | |
| 33 | 0.1125 | 68 | 1.4883 | | |
| 34 | 0.1183 | 69 | 1.6175 | | |

The above rates will be adjusted for any Additional Rating shown in the Policy Information section.

S0693-04Gus                    Page 4

## DEFINITIONS

THE FOLLOWING TERMS HAVE SPECIFIC MEANINGS IN YOUR POLICY. PLEASE REFER TO THE DEFINITIONS AS YOU READ YOUR POLICY.

**Additional Rating** is an increase in the Cost of Insurance that is applied when a life insured does not meet, at a minimum, our underwriting requirements for the standard Risk Classification.

**Age** at a specific date means age on the nearest birthday. If no specific date is mentioned, age means the life insured's age on the Policy Anniversary nearest to the birthday.

**Attained Age** on any date means Age at the Policy Date plus the number of whole years that have elapsed since the Policy Date.

**Cash Surrender Value** equals the Policy Value less the Surrender Charge and any outstanding Monthly Deductions due.

**Guaranteed Interest Account** is that part of the Policy Value which reflects the value you have in our general account.

**Issue Date** is the date shown in the Policy Information section from which the Suicide and Validity provisions are applied.

**Loan Account** is that part of the Policy Value which reflects amounts transferred from the Guaranteed Interest Account as collateral for a Policy Loan.

**Loan Interest Credited Differential** is the difference between the rate at which loan interest is charged and credited. It is the annual cost of keeping a loan. The Maximum Loan Interest Credited Differential is shown in the Policy Information section.

**Net Cash Surrender Value** is the Cash Surrender Value less the Policy Debt.

**Net Premium** is the gross premium paid less any Premium Charge.

**Policy Date** is the date from which charges for the first Monthly Deduction are calculated. The Policy Date is shown in the Policy Information section of this policy. Policy Years, Policy Months and Policy Anniversaries are determined from the Policy Date.

**Policy Debt** as of any date equals (a) plus (b) plus (c), minus (d), where:

(a)  is the total amount of loans borrowed as of such date;

(b)  is the total amount of any unpaid loan interest charges borrowed against the policy on a Policy Anniversary;

(c)  is any interest charges accrued from the last Policy Anniversary to the current date; and

(d)  is the total amount of loan repayments as of such date.

**Policy Value** is the sum of the values in the Loan Account and the Guaranteed Interest Account. It cannot go below zero.

**Premium Charge Limit** is used to determine the Premium Charge and the Surrender Charge in the first Policy Year and in any year in which you increase the Face Amount of this policy. The Premium Charge Limit for the initial Face Amount is shown in the Policy Information section. You will be advised of the Premium Charge Limit for any increase in Face Amount.

**Service Office** is the office that we designate to service this policy as shown on the front cover of your policy.

(continued)

### DEFINITIONS (continued)

**Surrender Charge Period** is the period beginning on the Policy Date or following any increase in Face Amount during which we will assess surrender charges. Surrender charges will apply during this period if you surrender the policy, make a partial withdrawal, or if it terminates due to default.

**Written Request** is your request to us which must be in a form satisfactory to us, signed and dated by you, and filed at our Service Office.

### AGE AND SEX

If the Age or Sex of the life insured was misstated in the application, we will change the Face Amount of insurance. The new Face Amount will be determined so that the Death Benefit will be that which the most recent Cost of Insurance deduction would have purchased for the correct Age and Sex.

### SUICIDE

If within two years after the Issue Date, the life insured dies by suicide, while sane or insane, the policy will terminate and our liability will be limited to:

(a)     the premiums paid; less

(b)     any partial Net Cash Surrender Value withdrawals; and less

(c)     the Policy Debt.

If the life insured dies by suicide, while sane or insane, within two years after the effective date of an increase in Face Amount, the Death Benefit for that increase will be limited to the Monthly Deductions taken for the increase.

We reserve the right under this provision to obtain evidence of the manner and cause of death of the life insured.

### PROTECTION AGAINST CREDITORS

If permitted by state law, all payments shall be exempt from the debts and contracts of the owners and beneficiaries, and from seizure by court order.

### CURRENCY AND PLACE OF PAYMENT

All payments to or by us will be in U.S. currency. We will make payments from our Service Office. We may require proof that the person claiming any payment is entitled to it.

### CONTRACT

The policy, application, supplementary benefits, and any endorsements form your whole contract. A copy of the application is attached to the policy and deemed a part of it.

We will not be bound by any statement that is not in the application or the policy. Only our President or one of our Vice-Presidents can agree to amend or modify the policy or waive any of its provisions. Any change must be in writing.

Statements made by you or the life insured are representations, not warranties, unless fraud is involved. We will not use any statement by you or the life insured to deny a claim, unless it is written in the application or any supplement to the application.

### VALIDITY

We have the right to contest the validity of this policy based on misrepresentations made in the initial application or an application for policy change that requires evidence of insurability. However, we cannot contest the validity of your policy after it has been in force during the life insured's lifetime for two years from the Issue Date.

(continued)

**VALIDITY** (continued)

We cannot contest the validity of an increase in Face Amount or the addition of a Supplementary Benefit after such increase or addition has been in force during the life insured's lifetime for two years from the date of such increase or addition.

We can contest after two years if the policy has been reinstated and has been in force during the life insured's lifetime for less than two years from the reinstatement date. If this is the case, we can only contest the validity in respect of any fact material to the reinstatement that was misrepresented.

### NON-PARTICIPATING

Your policy is non-participating.   It does not earn dividends.

### ANNUAL STATEMENT

Within 30 days after each Policy Anniversary, we will send you without charge a report showing:

(a)   the Death Benefit;

(b)   the Policy Value;

(c)   any Loan Account balance and loan interest charged since the last report;

(d)   the premiums paid for the year; and

(e)   any further information required by law.

### INFORCE ILLUSTRATION

Beginning on the first Policy Anniversary, you will receive an Inforce Illustration projecting your Policy Value.   The Inforce Illustration provided with your annual statement is available without charge; however, for additional reports we reserve the right to charge a fee, not to exceed $25.00.

### TAX CONSIDERATIONS

It is the intent that this policy be considered as life insurance for tax purposes, to comply with Section 7702 of the Internal Revenue Code of 1986, or any other equivalent section of the Code. We reserve the right to make any reasonable adjustments to the terms or conditions of this policy if it becomes necessary to allow it to qualify as life insurance.

We do not give tax advice, and this provision should not be construed to guarantee that the policy will be treated as life insurance or that the tax treatment of life insurance will never be changed by the future actions of any tax authority.

### RIGHT TO POSTPONE PAYMENT OF BENEFITS

We reserve the right to postpone the payment of Net Cash Surrender Values, partial Net Cash Surrender Value withdrawals and policy loans for up to six months from the date of request, except when used to make a premium payment.

### BENEFICIARY

The following four sections will apply unless there is a beneficiary appointment in force that provides otherwise.

**Beneficiary Classification.**   You can appoint beneficiaries for the Insurance Benefit in three classes: primary, secondary, and final. Beneficiaries in the same class will share equally in the Insurance Benefit payable to them.

**Payment To Beneficiaries.**   We will pay the Insurance Benefit:

(a)   to any primary beneficiaries who are alive when the life insured dies; or

(b)   if no primary beneficiary is then alive, to any secondary beneficiaries who are then alive; or

(continued)

**BENEFICIARY** (continued)

(c)   if no primary or secondary beneficiary is then alive, to any final beneficiaries who are then alive.

**Change Of Beneficiary.**  Until the life insured's death, you can change the beneficiary by Written Request unless you make an irrevocable designation. We are not responsible if the change does not achieve your purpose. The change will take effect as of the date you signed such request. It will not apply to any payments we made or any action we may have taken before we received your Written Request.

**Death Of Beneficiary.**  If no beneficiary is alive when the life insured dies, the Insurance Benefit will be payable to you; or if you are the life insured, to your estate. Unless otherwise provided, if a beneficiary dies before the seventh day after the death of the life insured, we will pay the Insurance Benefit as if the beneficiary had died before the life insured.

## OWNERSHIP AND ASSIGNMENT

Until the life insured's death, without any beneficiary's consent, except an irrevocable beneficiary, you can:

(a)   receive any amount payable under the policy;

(b)   exercise all rights and privileges granted by the policy; and

(c)   assign the policy.

An assignment does not bind us until we receive it at our Service Office. We are not responsible for its validity or its effects. It should be filed with us in duplicate. We will return a copy.

**Change of Owner.**  Until the life insured's death, the owner can change the ownership of the policy by Written Request. The change will take effect as of the date you signed the Written Request. It will not apply to any payments we made or any action we may have taken before we received your Written Request.

**Trustee Owner.**  Should the owner be a trustee, payment to the trustee(s) of any amount to which the trustee(s) is (are) entitled under the policy, either by death or otherwise, will fully discharge us from all liability under the policy to the extent of the amount so paid.

**Joint Ownership.**  Two or more owners will own the policy as joint tenants with right of survivorship, unless otherwise requested on the application or in any subsequent assignment of the policy. On death of any of the owners, the deceased owner's interest in the policy passes to the surviving owner(s).

**Successor Owner.**  Upon the owner's death during the life insured's lifetime, a named successor owner will, if then living, have all the owner's rights and interest in the policy. Until the life insured's death, the owner, without the consent of any beneficiary or any successor owner, can cancel or change the designation of successor owner. This may be done from time to time by agreement in writing with us.

### HOW VALUES ARE COMPUTED

We provide Cash Surrender Values that are at least equal to those required by law. A detailed statement of the method of computing the values of this policy has been filed with the Insurance Department of the State shown in the Policy Information section.

We base minimum Cash Surrender Values and reserves on the Commissioners 1980 Standard Ordinary Smoker or Non-Smoker Mortality Table. We also use these tables in determining Guaranteed Maximum Cost of Insurance Rates.

In computing values we use the same rate as the Guaranteed Interest Account Rate shown in the Table of Values in the Policy Information section.

### PAYMENT OF PREMIUMS

The minimum initial premium is shown in the Policy Information section.

(continued)

**PAYMENT OF PREMIUMS** (continued)

Subsequent premiums can be paid at any time at our Service Office, and in any amount subject to the Limits described below. On request, we will give you a receipt signed by one of our officers.

You may pay premiums until the life insured reaches Attained Age 100, at which time, Monthly Deductions cease. No further premiums may then be paid.

We reserve the right to request that you provide us with satisfactory evidence of insurability if a premium payment would result in an increase in the Death Benefit that is greater than the increase in Policy Value.

**Limits.** Premium payments are subject to the limitations under Section 7702 of the Internal Revenue Code of 1986, or any other equivalent section of the Code. We will refuse or refund any premium payments that would cause this policy to fail to qualify as life insurance under the Internal Revenue Code.

**Continuation of Insurance Upon Discontinuance of Premium Payments.** If you should discontinue paying premiums, we will continue to credit the Policy Value with interest and to take the Monthly Deductions due from the Guaranteed Interest Account. Your insurance coverage will continue in force subject to the Policy Protection Rider, if it is in effect, and the Grace Period section of the Termination provision.

### POLICY TERMINATION

**Default.** This policy will go into default if, at the beginning of any Policy Month, the Net Cash Surrender Value would go to or below zero after we take the Monthly Deduction that is due for that month.

**Grace Period.** We will allow 61 days from the date the policy goes into default, for you to pay the amount that is required to bring the policy out of default. At least 30 days prior to the termination of coverage, we will send a notice to your last known address, specifying the amount you must pay to bring the policy out of default. If we have notice of a policy assignment on file at our Service Office, we will also mail a copy of the notice of the amount due to the assignee on record.

The amount required to bring the policy out of default is equal to (a) plus (b) plus (c) where:

(a)   is the amount necessary to bring the Net Cash Surrender Value to zero if it is less than zero, at the date of default;

(b)   is the Monthly Deduction due on the date of default, plus the next two Monthly Deductions;

(c)   is the applicable Premium Charge.

**Termination Date.** This policy terminates on the earliest of the following events:

(a)   the end of the grace period for which you have not paid the amount necessary to bring the policy out of default;

(b)   surrender of the policy for its Net Cash Surrender Value;

(c)   the death of the life insured.

### REINSTATEMENT

You can ask us to reinstate your policy only if it terminates at the end of a grace period in which you did not make a required payment. You can reinstate the policy if you:

(a)   make a Written Request for reinstatement within 5 years after the date your policy terminates;

(b)   provide us with evidence of insurability satisfactory to us on the life insured; and

(c)   pay a premium equal to the amount that was required to bring the policy out of default immediately prior to termination, plus the amount needed to keep the policy in force to the next scheduled date for payment of the Planned Premium.

Any interest paid on outstanding premiums will not exceed a rate of 6% compounded annually.

(continued)

**REINSTATEMENT** (continued)

If we approve your request,

(a)  the reinstatement date will be the date we receive the required payment at our Service Office;

(b)  any Surrender Charge will be reinstated to the amount it was at the date of default;

(c)  the Surrender Charge period, if any, will be the same as on the date of default;

(d)  the Policy Value on the date of reinstatement, prior to the crediting of any Net Premium paid on the reinstatement, will be equal to the Policy Value on the date the policy terminated.

### INSURANCE BENEFIT

If the life insured dies while the policy is in force, we will pay the Insurance Benefit on receiving due proof of death, subject to the Age and Sex, Suicide and Validity provisions.

If the life insured dies after we receive a request from you to surrender the policy, there will be no Insurance Benefit.  We will pay the amount payable under the Surrender and Withdrawals provision instead.

**Insurance Benefit.**  The Insurance Benefit payable is:

(a)  the Death Benefit as described below; plus

(b)  any amounts payable under any Supplementary Benefits that form part of the policy; less

(c)  the value of the Policy Debt at the date of death.

If the life insured dies during a grace period, the Insurance Benefit payable described above will be modified as follows:

(a)  the Insurance Benefit will be reduced by any outstanding Monthly Deductions due; and

(b)  the Policy Value used in the calculation of the Death Benefit will be the Policy Value as of the default date.

**Death Benefit.**  The Death Benefit will depend on whether Death Benefit Option 1 or 2 is in effect on the date of death.

Under Option 1, the Death Benefit is the Face Amount of the policy at the date of the life insured's death.

Under Option 2, the Death Benefit is the Face Amount of the policy, plus the Policy Value at the date of the life insured's death.

**Minimum Death Benefit.**  To ensure that the policy continues to qualify as life insurance under the Internal Revenue Code, the sum of the Death Benefit as described above and the Benefit payable under any Supplementary Term Insurance on the life insured will never be less than the Policy Value at the date of death, multiplied by the applicable percentage in the table below.

| Table of Minimum Death Benefit Percentages | |
|---|---|
| **Attained Age** | **Applicable Percentage** |
| 40 and under | 250% |
| 45 | 215% |
| 50 | 185% |
| 55 | 150% |
| 60 | 130% |
| 65 | 120% |
| 70 | 115% |
| 75 | 105% |
| 90 | 105% |
| 95 and above | 100% |
| For ages not shown, the Applicable Percentage can be found by reducing the above Applicable Percentages proportionately. | |

**Payment of Insurance Benefit.**  We will pay the Insurance Benefit in one lump sum with interest calculated from the date of death to the date of payment. The interest payable will be no less than the rate required by current State law.  If the state does not specify the interest rate, we will use the rate for insurance benefits left on deposit with us.

### POLICY VALUE

**Premium Payments.** When we receive your premium payments at our Service Office, we subtract the Premium Charge shown in the Policy Information section. We add the balance (the Net Premium) to the Guaranteed Interest Account as of the day we receive the premium payment, and before any deductions due on that day are taken from your Guaranteed Interest Account. However, we will add any Net Premiums received before the Policy Date to your Guaranteed Interest Account as of the Policy Date.

**Monthly Deductions.** At the beginning of each Policy Month a deduction is taken from your Guaranteed Interest Account. Monthly Deductions are calculated from the Policy Date. If you requested a Policy Date which precedes the date on which we receive the initial premium, Monthly Deductions due for the period prior to receipt of the initial premium will be taken on the date we receive the initial premium.

Monthly Deductions are due until the Policy Anniversary on which the life insured reaches Attained Age 100. If the policy is in force on that date it will remain in force, without further premium payments or Monthly Deductions, subject to the Policy Loan Conditions provision.

The deduction for any Policy Month is the sum of the following amounts determined at the beginning of that month:

(a)   the Monthly Administrative Charge shown in the Policy Information section;

(b)   the monthly Contract Charge shown in the Policy Information section;

(c)   the monthly cost of any Supplementary Benefits you have added to your policy; and

(d)   the monthly Cost of Insurance for the life insured.

The Cost of Insurance for a specific Policy Month is determined as the rate for the Cost of Insurance for that month, as described below, multiplied by the Net Amount At Risk.

The Net Amount At Risk is equal to the result of (a) minus (b), where:

(a)   is the Death Benefit on the first day of the Policy Month, divided by the Death Benefit Discount Factor shown in the Table of Values in the Policy Information section; and

(b)   is the Policy Value on the first day of the Policy Month.

The rates for the Cost of Insurance as of the Policy Date and subsequently for each Face Amount increase, are based on the life insured's Age, Sex, Risk Classification and the duration the coverage has been in force. The Cost of Insurance Rate shown in the Policy Information section is guaranteed for the first Policy Year. The Cost of Insurance calculation will reflect any Additional Rating shown in the Policy Information section of this policy.

We will re-determine charges and Cost of Insurance rates from time to time on a basis that does not discriminate unfairly within any class of lives insured. The Cost of Insurance rates will never exceed those shown in the Table of Guaranteed Maximum Cost of Insurance Rates on page 4.

**Other Deductions.** We will deduct a Surrender Charge if during the Surrender Charge Period:

(a)   you surrender the policy for its Net Cash Surrender Value; or

(b)   you make a partial withdrawal of the Net Cash Surrender Value; or

(c)   you do not pay an amount due at the end of a grace period, and your policy terminates.

See the Surrender and Withdrawals provision for details.

## POLICY VALUE COMPOSITION

Your Policy Value at any time is equal to the sum of the values you have in the Loan Account and the Guaranteed Interest Account.

**Loan Account Value.** The amount you have in the Loan Account at any time equals:

(a)   amounts transferred to it for loans or borrowed loan interest; plus

(b)   interest credited to it; less

(c)   amounts transferred from it for loan repayment.

For the details of the Loan Account see the Policy Loan Conditions provision.

**Guaranteed Interest Account Value.** The amount you have in the Guaranteed Interest Account at any time equals:

(a)   Net Premiums allocated to it; plus

(b)   amounts transferred to it; plus

(c)   interest credited to it; less

(d)   Monthly Deductions; less

(e)   amounts transferred from it; less

(f)   amounts withdrawn from it.

Interest will be credited to amounts in the Guaranteed Interest Account at an effective annual rate of no less than the Guaranteed Interest Account Rate as shown in the Policy Information section. The actual rates used will be set by us from time to time. For all transactions, interest is calculated and credited from the date of the transaction.

## POLICY LOAN CONDITIONS

At any time while this policy is in force and has an available loan value, you can get a loan by Written Request. We may require a loan agreement from you as the policy is the only security for the loan.

**Available Loan Value.** The available loan value on any date is the Net Cash Surrender Value, less the Monthly Deductions due to the next Policy Anniversary.

**Loan Account.** When you take out a loan, or when loan interest charges are borrowed, we will do a transfer from the Guaranteed Interest Account into the Loan Account.

**Loan Interest Charged.** Interest will accrue daily on loans. In the event that you do not pay the loan interest charged in any Policy Year, it will be borrowed against the policy and added to the Policy Debt in arrears at the Policy Anniversary.

Loan interest will continue to be charged if there is an outstanding loan when Monthly Deductions and premium payments cease at the life insured's Attained Age 100. After this date the policy will go into default at any time the Policy Debt exceeds the Policy Value. We will allow 61 days from the date the policy goes into default for you to pay the amount that is required to bring the policy out of default. At least 30 days prior to termination, we will send a notice to your last known address. If you had filed a notice of assignment with us, we will also send a copy of the notice to the last known address of the assignee on record. Payment of the loan interest during the 61-day grace period will bring the policy out of default.

You will be charged loan interest on either a fixed or variable loan interest basis. The initial basis you elected is shown on your application for this policy. You may change your loan interest basis on any Policy Anniversary, provided we receive a Written Request from you to do so at least 60 days prior to your Policy Anniversary.

(continued)

**POLICY LOAN CONDITIONS** (continued)

The Initial Loan Interest Charged Rate is shown in the Policy Information section. You will be informed of the loan interest rate for each subsequent year on your Annual Statement.

If you elect the fixed loan interest basis, you will be charged interest at an effective annual rate of 6%.

If you elect the variable loan interest basis, you will be charged interest based on an index. The indexed rate will never be more than the maximum permitted by law. The loan interest rate will be set once a year at your Policy Anniversary and it will not change during the year. The indexed rate will not exceed the greater of (a) and (b), where:

(a)   is 6%; and

(b)   is the Moody's Corporate Bond Yield Average - Monthly Average Corporates for the calendar month ending two months before the beginning of the month in which your Policy Anniversary falls. For example, if your Policy Anniversary is in April, we would use the Average for January.

If the Average is at least one-half of one percent smaller than the rate we have set for the previous Policy Year, we will reduce the indexed rate to a rate no more than that Average. If the Average is at least one-half of one percent greater than the rate we have set for the previous Policy Year, we will increase the indexed rate to a rate no more than that Average.

In the event that Moody's Corporate Bond Yield Average-Monthly Average Corporates is no longer published, we will use a similar average as required by the Insurance Commissioner of the State shown in the Policy Information section.

**Loan Interest Credited.** Interest will accrue daily to amounts in the Loan Account. The effective annual Loan Interest Credited Rate is the Loan Interest Charged Rate less the Loan Interest Credited Differential.

The maximum Loan Interest Credited Differential is shown in the Policy Information section.

**Loan Repayment.** You may repay the Policy Debt in whole or in part at any time prior to the death of the life insured, and while the policy is in force. When you repay a loan, we will transfer an amount equal to the amount paid from the Loan Account to the Guaranteed Interest Account.

While a loan exists, we will treat any amounts you pay as premiums, unless you request in writing that they be treated as loan repayments.

### SURRENDER AND WITHDRAWALS

**Surrender of the Policy.** You may surrender this policy for its Net Cash Surrender Value at any date prior to the death of the life insured, by making a Written Request. After we receive your Written Request to surrender the policy, no insurance will be in force.

During the Surrender Charge Period, we will deduct a Surrender Charge from your Policy Value if you surrender the policy for its Net Cash Surrender Value or if it terminates at the end of a grace period. See the Policy Information section.

If you have increased the Face Amount of insurance, the Surrender Charge will be the sum of the Surrender Charge for the initial Face Amount plus the Surrender Charge for each increase as shown in the Policy Update page amending the policy. There will be a separate Surrender Charge Period for each increase. No additional Surrender Charge will be imposed on any portion of an increase in Face Amount that restores a prior decrease.

**Partial Net Cash Surrender Value Withdrawal.** Once per Policy Month, after the first Policy Anniversary, you may request a partial Net Cash Surrender Value withdrawal provided there is a Net Cash Surrender Value for the policy. The withdrawal will be made as of the end of the day on which we receive your Written Request.

(continued)

## SURRENDER AND WITHDRAWALS (continued)

We will deduct a pro-rata Surrender Charge from the Policy Value at the time of the partial net cash surrender value withdrawal. It will equal the sum of the pro-rata Surrender Charge for the initial Face Amount and any previous increase in Face Amount.

The pro-rata Surrender Charge for the initial Face Amount or any increase in Face Amount will equal (a) divided by (b), multiplied by (c), where:

(a)   is the amount of the partial Net Cash Surrender Value withdrawal;

(b)   is the Net Cash Surrender Value prior to the withdrawal; and

(c)   is the total current Surrender Charge prior to the withdrawal.

The Surrender Charge will be reduced by the amount of any pro-rata Surrender Charge imposed. We will inform you of the remaining Surrender Charge.

If Death Benefit Option 1 is in effect at the time of the withdrawal, then the Face Amount of insurance will be reduced:

(a)   by the amount of the withdrawal plus the pro-rata Surrender Charge, if at the time of the withdrawal the Death Benefit equals the Face Amount; otherwise

(b)   by the amount, if any, by which the withdrawal plus the pro-rata Surrender Charge exceeds the difference between the Death Benefit and the Face Amount.

If there had been a prior increase in the Face Amount, we will do the decrease in the same order as for a requested decrease. See the Decrease In Face Amount section of the Changing The Death Benefit Option Or The Face Amount provision.

## CHANGING THE DEATH BENEFIT OPTION OR THE FACE AMOUNT

**General Conditions.**   You may change your Death Benefit Option or your Face Amount of insurance by Written Request.   Such changes are subject to the conditions of this provision.

The following general conditions apply to the changes under this provision:

(a)   changes to your Death Benefit Option and Face Amount Increases or Decreases may be made at any time after the first policy year;

(b)   any such change will take effect at the beginning of the Policy Month following the date we approve the request;

(c)   we reserve the right to limit any changes that would cause this policy to fail to qualify as life insurance under the Internal Revenue Code.

**Change from Death Benefit Option 1 to Option 2**

The Face Amount of insurance after the change from Option 1 to Option 2 will be (a) minus (b), where:

(a)   is the Face Amount of insurance immediately before the change; and

(b)   is the Policy Value on the effective date of the change.

We will not allow the change in Death Benefit Option if it would cause the Face Amount to decrease below the Minimum Face Amount shown in the Table of Values in the Policy Information section.

(continued)

### CHANGING THE DEATH BENEFIT OPTION OR THE FACE AMOUNT (continued)

**Change from Death Benefit Option 2 to Option 1**

The Face Amount of insurance after the change from Option 2 to Option 1 will be (a) plus (b), where:

(a)   is the Face Amount of insurance immediately before the change; and

(b)   is the Policy Value on the effective date of the change.

We will not increase the Surrender Charge because of the increase in the Face Amount of insurance resulting from this change.

**Decrease In Face Amount.**   The Minimum Face Amount Decrease is shown in the Policy Information section. We may change this amount as of 90 days after we send you written notice of such change.

We will not allow a decrease:

(a)   if it is for the reduction or termination of a prior Face Amount increase which has been in force for less than one year; or

(b)   if it would cause the Face Amount to go below the Minimum Face Amount shown in the Policy Information section, unless the decrease is the result of a partial net cash surrender value withdrawal.

When you request a decrease in the Face Amount of insurance, we will reduce the Face Amount in the following order:

(a)   the amounts of insurance provided by any increases you may have requested to the policy Face Amount, starting with the most recent increase until all such increases are reduced; then

(b)   the initial Face Amount of the policy.

**Increase in Face Amount.**   For an increase in the Face Amount of insurance, you must provide us with evidence of insurability on the life insured that is satisfactory to us. The Minimum Face Amount Increase is shown in the Policy Information section. We may change this amount as of 90 days after we send you written notice of such change.

We reserve the right to refuse an increase if the life insured's Attained Age at the date the increase would be effective is greater than the maximum issue age for new policies at that time.

The Face Amount of insurance will increase in the following order:

(a)   we will restore the Face Amount reduced by the most recent decrease first, followed by

(b)   the next most recent decrease until all decreases are restored, then

(c)   we will add the new Face Amount of insurance.

There will be no new Surrender Charge, Contract Charge, Premium Charge or Premium Charge Limit associated with the restoration of prior decreases under (a) or (b) above. However, there will be a new Surrender Charge, Contract Charge, Premium Charge, and Premium Charge Limit associated with the new Face Amount under (c). We will inform you of any new Surrender Charge, Contract Charge, Premium Charge and Premium Charge Limit at the time of the increase.

### RIGHT TO CANCEL INCREASES

If you request an increase in Face Amount which results in a new Surrender Charge, you have the same rights to cancel the increase as described on the front cover of this policy, under the Right to Return Policy. If canceled, the Policy Value and the Surrender Charge will be recalculated to the amounts they would have been, had the increase not taken place. You may request a refund for all or a portion of premiums paid during this period. Upon repayment of the refund, we will recalculate the Policy Value and the Surrender Charge to the amounts they would have been, had the premiums not been paid.

## SUPPLEMENTARY BENEFIT

## POLICY PROTECTION RIDER

This benefit is part of your policy. Except where the benefit provides otherwise, it is subject to all the provisions of your policy.

**Effective Date.** The Effective Date for this benefit is shown in the Policy Information section.

**Benefit Period.** This benefit applies to your policy for the duration shown in the Policy Information section.

**Benefit Cost.** The monthly cost of the benefit forms part of the Monthly Deduction under your policy. It is shown in the Policy Information section.

**Benefit.** This benefit prevents your policy from going into default under the Policy Termination provision of the policy provided that the Net Policy Protection Value is greater than zero. This benefit also applies to any Supplementary Term Insurance only for the first five policy years.

**Net Policy Protection Value.** This is an amount equal to the Policy Protection Value, shown below, less policy debt.

**Policy Protection Value.** This is a reference value only. It is determined in the same way that your Policy Value is determined, as described in the Policy Value provision of your policy, except that:

(a)    the Guaranteed Interest Account is credited with the Policy Protection Value interest rate shown in the Policy Information section; and

(b)    the rates used in calculating the Cost of Insurance for the basic policy and any Supplementary Term Insurance are the Policy Protection Value Rates shown in the Policy Information section. A new table of Policy Protection Value rates will be provided for any increase in Face Amount; and

(c)    the monthly cost of any Supplementary Benefit which is based on all or part of the charges which make up the Monthly Deduction will be determined using such charges as calculated in accordance with this section.

The Policy Protection Value is not used in determining the actual Policy Value, Cash Surrender Value or Insurance Benefit provided by this policy.

**Policy Default.** Your policy will go into default at the beginning of any Policy Month if:

(a)    the Net Cash Surrender Value is zero or below; and

(b)    the Net Policy Protection Value goes to zero or below.

If on the date this Benefit terminates, the Net Cash Surrender Value of your policy is zero or below, your policy will go into default as provided under the Policy Termination provision of your policy.

**Policy Grace Period.** We will allow 61 days from the date the policy goes into default for you to pay the amount that is required to bring the policy out of default. At least 30 days prior to termination of the policy, we will send a notice to your last known address, specifying the amount you must pay to bring the policy out of default. If we have notice of a policy assignment on file at our Service Office, we will also mail a copy of the notice of the amount due to the assignee on record.

The amount required to bring the policy out of default is the lesser of (a) or (b) where:

(a)    is the amount required under the Policy Termination provision;

(b)    is the Monthly Deduction, as modified by the Policy Protection Value section, due on the date of default, plus the next two such Monthly Deductions.

**Benefit Default.** This benefit will go into default at the beginning of any Policy Month in which the Net Policy Protection Value goes to zero or below.

S133-4ok                              Page 1

## POLICY PROTECTION RIDER

**Benefit Grace Period.** We will allow 61 days from the date the benefit goes into default for you to pay the amount that is required to bring the benefit out of default. At least 30 days prior to termination of the benefit, we will send a notice to your last known address, specifying the amount you must pay to bring the benefit out of default. If we have notice of a policy assignment on file at our Service Office, we will also mail a copy of the notice of the amount due to the assignee on record.

The amount required to bring the benefit out of default is equal to the Monthly Deduction, as modified by the Policy Protection Value section, due on the date of default, plus the next two such Monthly Deductions.

**Termination.** This benefit terminates at the earliest of:

(a)   the end of the benefit period shown in the Policy Information section;

(b)   the end of the grace period for which you have not paid the amount necessary to bring this benefit out of default;

(c)   the date your policy terminates;

(d)   the date we receive your Written Request for termination of this benefit.

This benefit cannot be reinstated after it terminates.

**THE MANUFACTURERS LIFE INSURANCE COMPANY (U.S.A.)**

President

S133-4ok                                    Page 2

## ENDORSEMENT

### SIX-MONTH POLICY EXCHANGE OPTION

This endorsement has been added to and made a part of the policy to which it is attached.

**Effective Date:** This endorsement is effective on the Issue Date set out in the Policy Information Section of your policy.

**Option.** Subject to the Conditions of Exchange provision below, this endorsement gives you the option to exchange your policy for another permanent life insurance policy within six months after the Issue Date.

On receipt of your written request and completed application at our Service Office, we will transfer all of the premiums paid under this policy to the new policy elected by you.

**Definition.** Total Face Amount as used in this Endorsement means the sum of:

(a)  the death benefit payable under the policy, and

(b)  the death benefit payable under any endorsement, rider or supplementary benefit attached to the policy.

**Conditions of Exchange.** The exchange to the new policy will be subject to the following:

(a)  the new policy can be any other permanent life insurance policy offered for sale by John Hancock Life Insurance Company (U.S.A.) at the time you exercise the option;

(b)  the new policy will have the same Policy Date as this policy;

(c)  no reduction in the total Face Amount will be allowed for any person insured under this policy;

(d)  no evidence of insurability will be required to exchange this policy, provided the Total Face Amount of the new policy for each person insured does not exceed the Total Face Amount of this policy for such person when you exercise the option;

(e)  if evidence of insurability is required because the Total Face Amount of the new policy exceeds the Total Face Amount of this policy, this policy will remain in effect in accordance with its terms, and there will be no increase in the amount of insurance until we approve the evidence and we agree to issue the new policy. If the premium for the new policy is greater than the premium to be transferred under this endorsement, this policy will remain in effect in accordance with its terms, and there will not be any increase in the amount of insurance until the additional premium is paid;

(f)  you will not incur any surrender charges that would otherwise be applicable to this policy;

(g)  we will charge an administrative fee of $200.00 for the exchange;

(h)  you may exercise this option under this policy only once. This endorsement will not apply to any policy issued under this exchange option.

## SIX-MONTH POLICY EXCHANGE OPTION

**Applying Premiums to the New Policy.** We will apply the premiums transferred from this policy based on the type of new policy you elect, as follows:

(a)     if the new policy is a participating Individual Life Insurance policy, the premiums transferred will apply to the new policy as of the Policy Date of this policy. The premium for the new policy cannot be less than the premium for this policy. The new policy will not take effect until we receive any additional premium required under the new policy;

(b)     if the new policy is a Flexible Premium Adjustable Life Insurance policy, premiums transferred will apply to the new policy as of the same date that we had applied the premium under this policy;

(c)     if the new policy is a Flexible Premium Variable Life Policy the premium will be credited as of the Business day next occurring after we receive your Written Request and completed application at our Service Office (premium transfer date).

Monthly deductions and any premiums or other charges due under the new policy from the Policy Date up to and including the premium transfer date will be taken as of that date.

The balance of the premium transferred will be allocated to the accounts as of the premium transfer date. The unit values used for allocations to the Investment Account will be determined as of the close of business on that date.

If evidence of insurability is required, the premium transfer date will be the date we agree to issue the new policy.

**Suicide and Validity.** The period during which coverage was in force under this policy will be applied towards satisfying the time periods of the Suicide and Validity provisions of the new policy.

If there is an increase in the face amount of the new policy, or a supplementary benefit is added at time of the exchange, the Suicide and Validity provision will start anew for such increase or addition, as described under the new policy.

**Termination.** This policy will terminate on the date we transfer the premiums from this policy to the new policy.

**JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)**

*[signature]*
President

## ENDORSEMENT

## PRO-RATA SURRENDER CHARGES ON FACE AMOUNT DECREASES

This endorsement has been added to and made part of the policy to which it is attached. Should any provisions in your policy conflict with this endorsement, the provisions of this endorsement will prevail.

This endorsement takes effect on the Policy Date shown in the Policy Information section of your policy.

It amends your policy to allow for the deduction of a pro-rata Surrender Charge during the Surrender Charge Period, when the cumulative decrease in the base Face Amount of insurance is in excess of the Surrender Charge Decrease Exemption defined below. The Surrender Charge Period is shown in the Policy Information section of your policy.

**Surrender Charge Decrease Exemption** is 10% of the initial base Face Amount. This amount is set at issue of the policy and applies to decreases in the base Face Amount of insurance. It does not apply to a full surrender of the policy or partial Net Cash Surrender Value withdrawals.

**Pro-Rata Surrender Charge.** If you decrease the Face Amount of insurance during the Surrender Charge Period, and the total amount of all decreases is in excess of the Surrender Charge Decrease Exemption, we will deduct a pro-rata Surrender Charge from the Policy Value on the portion by which the total of such decreases exceed the Surrender Charge Decrease Exemption.

The pro-rata Surrender Charge deducted for decreases in excess of the Surrender Charge Decrease Exemption will equal (a) divided by (b), multiplied by (c), where:

(a)    is the amount of the decrease in the initial base Face Amount or previous increase in base Face Amount which exceeds the Surrender Charge Decrease Exemption;

(b)    is the amount of the initial base Face Amount or previous increase in a base Face Amount, immediately prior to the decrease and Surrender Charge Decrease Exemption; and

(c)    is the current Surrender Charge for the initial base Face Amount or previous increase in base Face Amount immediately prior to the decrease and Surrender Charge Decrease Exemption.

A decrease in Face Amount caused by a change from Death Benefit Option 1 to 2 will not incur the pro-rata Surrender Charge described above.

Each time we deduct the pro-rata Surrender Charge for a Face Amount decrease, we will reduce the remaining Surrender Charge in the same proportion that the Surrender Charge deducted bears to the total Surrender Charge immediately before the Face Amount decrease.

**THE MANUFACTURERS LIFE INSURANCE COMPANY (U.S.A.)**

President

S793-2us

58 992 884                                      NS    N

SONDRA ROSE SCHLANGER

CHANGES NOT OTHERWISE RATIFIED PROVISION

(COPIES OF THE APPLICATION FOR THIS POLICY AND OF ANY APPLICATION SUPPLEMENT ARE
ATTACHED. THE POLICY SHOULD BE CAREFULLY EXAMINED AND ANY INACCURACIES OR
OMISSIONS SHOULD BE REPORTED TO THE COMPANY IMMEDIATELY.)

THIS PROVISION IS INCLUDED IN AND MADE A PART OF THE POLICY TO WHICH IT IS
ATTACHED BY THE COMPANY, AND THE PROVISION WILL BE DEEMED TO HAVE TAKEN EFFECT
AS OF THE POLICY'S DATE OF ISSUE.

IN ACCORDANCE WITH THE AGREEMENT IN THE APPLICATION FOR THIS POLICY, CHANGES NOT
OTHERWISE RATIFIED ARE SPECIFIED BELOW:


THE ANSWER TO QUESTION 7A OF THE APPLICATION SHOULD READ:
7A) PRIMARY: THE OWNER

President

FORM 409